IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-01117-KLM

**ADEM ARSLANI**

    **Plaintiff,**

v.

**UMF GROUP, INC.**, and **JOHN T. ROOT, JR.**,
and **SEAN ROSS OR JOHN DOE Defendant
using name "Sean Ross" as an alias**

    **Defendants.**

## MOTION FOR DEFAULT JUDGMENT

Plaintiff, Adem Arslani ("Plaintiff" or "Arslani"), by and through counsel, pursuant to Fed. R. Civ. P. 55 and D.C.COLO.LCivR 55.1, respectfully moves this Court for entry of a default judgment against Defendant UMF Group, Inc. ("UMF Group"). In support of this Motion, Plaintiff states as follows:

1. Plaintiff initiated this matter with the Court on April 16, 2019. [DE 1; *see also* Affidavit of Michael A. Valenti ("Valenti Affidavit") at ¶ 2, attached as Exhibit A hereto.]

2. Service on UMF Group was completed on May 29, 2019. [DE 9; *see also* Valenti Affidavit at ¶ 2.]

3. To date, UMF Group has failed to serve any responsive pleadings or enter any appearance in this matter. [*See* Valenti Affidavit at ¶ 3.]

4. On January 13, 2020, Plaintiff obtained the Clerk's Entry of Default as to UMF Group. [DE 25; *see also* Valenti Affidavit at ¶ 4.]

5. UMF Group, a corporation, is not a minor or incompetent person and is not in the military service. [Valenti Affidavit at ¶ 5.]

6. This Court has personal jurisdiction over UMF Group because UMF Group was a Colorado corporation that transacted business in the State of Colorado. [DE 1 at ¶ 10; *see also* Valenti Affidavit at ¶ 6.]

7. This Court has subject matter jurisdiction over the claims asserted against UMF Group pursuant to 28 U.S.C. § 1331 and Section 27(a) of the Securities and Exchange Act of 1934 [15 U.S.C. § 78aa(a).] [DE 1 at ¶ 9.] Specifically, the claims asserted against UMF Group arise under Sections 10(b) of the Securities and Exchange Act of 1934 [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission [17 C.F.R. § 240.10b-5]. [DE 1 at ¶ 8; *see also* Valenti Affidavit at ¶ 7.]

8. The well-pleaded allegations of Plaintiff's Complaint satisfy the elements of a claim asserted under Section 10(b) of the Securities and Exchange Act of 1934 [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission [17 C.F.R. § 240.10b-5]. Section 10(b) makes it "unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange…[t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered…any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). Rule 10b-5 promulgated thereunder makes it unlawful for any person, directly or indirectly, in connection with the purchase or sale of securities, "(a) [t]o employ any device, scheme, or artifice to defraud; (b) [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not

misleading, or (c) [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person….." 17 C.F.R. § 240.10b-5. "To recover damages for violations of Section 10(b) and Rule 10b-5, a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014) (internal citations omitted). Plaintiff's Complaint alleges that UMF Group, Inc. "carried out a plan, scheme, and course of conduct which was intended to and did: (i) deceive Plaintiff and the investing public; (ii) artificially inflate and maintain the market price of UMF Group stock; (iii) cause Plaintiff to purchase UMF Group Stock at artificially inflated prices." [DE 1 at ¶ 72.]

9.      Plaintiff's Complaint further alleges that UMF Group, "by use of the means or instrumentalities of interstate commerce or by the mails, in connection with the purchase or sale of securities, knowingly or recklessly: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts, or omitted material facts necessary to make his statements not misleading; and/or (c) engaged in acts, practices, or courses of business which operated as fraud or deceit upon Plaintiff." [DE 1 at ¶ 73.] Specifically, UMF Group published numerous financial statements and issued numerous press releases regarding its control persons and the nature of its business which were false and were intended to create public interest around the Company and artificially inflate its stock price." [*See, e.g.*, DE 1 at ¶¶ 33-41, 50-53.] *See Halliburton Co.*, 573 U.S. at 267 ("To recover damages for violations of Section 10(b) and Rule 10b-5, a plaintiff must prove…a material misrepresentation or omission by the defendant [and] scienter").

10. Plaintiff's Complaint further alleges that, "[a]s a result of the Defendants' dissemination of false and misleading information and failure to disclose material facts as set forth herein, Plaintiff acquired UMF Group securities during the Relevant Period at artificially inflated prices and was damaged thereby." [DE 1 at ¶ 75.] Specifically, "Plaintiff visited the OTC Markets website to assess the Company. Plaintiff reviewed the Company's financial statements and disclosures concerning its new product, 'CryptoSecure.' … In reliance on the materially false and misleading financial statements… Plaintiff invested in the Company and purchased shares of UMF Group stock on the over-the-counter market." [DE 1 at ¶¶ 55-56.] *See Halliburton Co.*, 573 U.S. at 267 ("To recover damages for violations of Section 10(b) and Rule 10b-5, a plaintiff must prove… a connection between the misrepresentation or omission and the purchase or sale of a security [and] reliance upon the misrepresentation or omission").

11. Plaintiff's Complaint further alleges that, "[a]t the time of the misrepresentations and omissions of material facts, Plaintiff was ignorant of their falsity, and believed them to be true. Had Plaintiff known the truth about UMF Group's true intrinsic value…he would not have purchased UMF Group securities." [DE 1 at ¶ 76.] Specifically, "[h]ad Plaintiff been aware of the true state of the Company's financial statements and operations, and of the Defendants' participation in the "pump-and-dump" scheme, Plaintiff would not have made his investment decisions." [DE 1 at ¶ 58.] *See Halliburton Co.*, 573 U.S. at 267 ("To recover damages for violations of Section 10(b) and Rule 10b-5, a plaintiff must prove… a connection between the misrepresentation or omission and the purchase or sale of a security [and] reliance upon the misrepresentation or omission").

12. Plaintiff's Complaint further alleges that, "[a]s direct and proximate result of the above-referenced violations, Plaintiff has suffered damages in excess of $85,000…." [DE 1 at ¶

4

78.] Specifically, "[t]hroughout January 2018, Plaintiff purchased 80,300 shares of UMF Group for a total price exceeding $85,500. Shortly after Plaintiff purchased the shares of UMF Group, the stock price plummeted. On January 22, 2018, the stock price traded at $1.67 per share. Just one month later, on February 22$_{nd}$, the stock closed at $0.09 per share. By March 2018, the stock was trading at less than $0.05 per share." [DE 1 at ¶¶ 56-57.] Moreover, "[t]he decline in price of UMF Group's stock after the truth came out was a direct and proximate result of the nature and extent of the Defendants' fraud finally being revealed to the public. The timing and magnitude of UMF Group's stock price decline negates any inference that the loss suffered by Plaintiff was caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to the Defendants' fraudulent conduct. The economic loss suffered by Plaintiff was a direct and proximate result of the Defendants' fraudulent scheme to artificially inflate the price of UMF Group stock and the subsequent decline in their value when the Defendants' prior misrepresentations and other fraudulent conduct was revealed." [DE 1 at ¶ 59.] *See Halliburton Co.*, 573 U.S. at 267 ("To recover damages for violations of Section 10(b) and Rule 10b-5, a plaintiff must prove… economic loss [and] loss causation").

13. As set forth above, the well-pleaded allegations of Plaintiff's Complaint satisfy the elements of the causes of action asserted against UMF Group. Consequently, Defendant UMF Group is liable to Plaintiff for compensatory damages in the amount of $105,387.48, as follows:

    a. The net amount Plaintiff paid for the common stock of Defendant UMF Group, totaling $85,549.38 (as set forth in Exhibit A to Plaintiff's Verified Complaint). [Valenti Affidavit at ¶ 8.]

    b. Prejudgment interest in the amount of $19,838.10. [Valenti Affidavit at ¶ 8.] Prejudgment interest is appropriate in this case because the equities particularly favor an award of prejudgment interest in cases of investment fraud, and such will compensate Plaintiff for being deprived of the monetary value of his loss from the time of the loss to the payment of judgment. *See United States Indus. v. Touche Ross & Co.*, 854 F.2d 1223, 1256-57 (10th Cir. 1988) (under federal law, "the rationale underlying an award of prejudgment interest is to compensate the wronged party for being deprived of the monetary value of his loss from the time of the loss to the payment of judgment" and "prejudgment interest is ordinarily awarded, absent some justification for withholding it" and "prejudgment interest is particularly appropriate in cases of investment fraud" and "[i]n particular, where a defendant's behavior has involved dishonest or fraudulent conduct, the equities favor an award of prejudgment interest as compensatory damages") (internal citations omitted).

    c. Post-judgment interest thereon at a rate of 9 percent per annum. [Valenti Affidavit at ¶ 8.]

A proposed Judgment is tendered herewith.

Respectfully submitted,

VALENTI HANLEY PLLC

  /s/ Michael A. Valenti
Michael A. Valenti, Esq.
Hayden A. Holbrook, Esq.
401 W. Main Street, Suite 1950
Louisville, KY 40202
(502) 568-2100

1434 Spruce Street, Suite 100
Boulder, CO 80302
(303) 482-5969
*mvalenti@vhrlaw.com*
*hholbrook@vhrlaw.com*
Counsel for Plaintiff, Adem Arslani

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of June, 2020, I electronically filed the foregoing document through the Electronic Case Filing System ("ECF"), which will provide notice of electronic filing to all counsel of record who have appeared in this case.