**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 19-cv-1117-WJM-KLM

ADEM ARSLANI,

      Plaintiff,

v.

UMF GROUP, INC.,
JOHN T. ROOT, JR.,
SEAN ROSS,

      Defendants.

---

**ORDER DEFERRING RULING ON PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT**

---

In this action brought pursuant to Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("SEA"), Plaintiff Adem Arslani alleges that UMF Group, Inc. and its officers, Sean Ross and John T. Root, engaged in fraudulent practices that induced him to purchase stock at an artificially inflated price.  Arslani contends that, when the stock price plummeted shortly after his purchases, he incurred substantial economic losses.

Arslani served UMF Group with process on May 29, 2019.  (ECF No. 9.)  UMF Group has failed to appear or otherwise defend.  Arslani obtained clerk's entry of default on January 13, 2020.  (ECF No. 25.)  Before the Court is Arslani's Motion for Default Judgment ("the Motion") against UMF Group.  (ECF No. 33.)  For the following reasons, the Court defers ruling on the Motion and directs Arslani to file documentation supporting the amount of damages that he claims.

## I. BACKGROUND

Arslani filed his Complaint on April 16, 2019 (ECF No. 1).  He alleged three

counts of violations of federal securities law against the aforementioned three

defendants.  (ECF No. 1 ¶¶ 64–82.)  The Motion seeks default judgment against only

UMF Group, and alleges violations of Section 10(b) of the SEA and Rule 10b-5,

promulgated thereunder by the Securities and Exchange Commission ("SEC").  (ECF

No. 33 at 1.)

Arslani alleges that UMF Group is a publicly traded company that was

incorporated in Colorado in 1988.  (ECF No. 1 ¶ 12.)  UMF Group was initially in the

business of oil and gas exploration.  (*Id.*)  In November of 2017, UMF Group

announced plans to acquire a company focused on crypto-currency, which had

developed an application called "CryptoSecure."  (*Id.* ¶ 51.)

On January 12, 2018, a representative from a company called Stock Profit

Report contacted Arslani and solicited him to purchase stock from UMF Group.  (*Id.* ¶

54.)  After reviewing the company's financial statements and disclosures regarding

CryptoSecure, throughout January 2018, Arslani purchased 80,300 shares of UMF

Group stock for a total price of approximately $85,500, representing an average price of

$1.67 per share.  (*Id.* ¶¶ 55–56.)

On February 22, 2018, UMF Group stock traded at a price of $0.09 per share.

(*Id.* ¶ 57.)  In March 2018, UMF Group stock traded at a price of less than $0.05 per

share.  (*Id.*)  Arslani contends that the decline in the stock's value was precipitated

when investors became aware that UMF Group had fabricated its statements about its

involvement in the crypto-currency market.  (*Id.* ¶ 59.)  As a result, Arslani's investment

in UMF Group was substantially devalued.  (*Id.*)

## II. LEGAL STANDARD

Default must enter against a party who fails to appear or otherwise defend a

lawsuit.  Fed. R. Civ. P. 55(a).  Default judgment must be entered by the Clerk of Court

if the claim is for "a sum certain"; in all other cases, "the party must apply to the court

for a default judgment."  Fed. R. Civ. P. 55(b)(2).  Default judgment is typically available

"only when the adversary process has been halted because of an essentially

unresponsive party," in order to avoid further delay and uncertainty as to the diligent

party's rights.  *In re Rains*, 946 F.2d 731, 732–33 (10th Cir. 1991) (internal quotation

marks and citation omitted).

## III. ANALYSIS

Before granting a motion for default judgment, the Court must take several steps.

First, the Court must ensure that it has subject-matter jurisdiction over the action and

personal jurisdiction over the defaulting defendant.  *See Williams v. Life Sav. & Loan*,

802 F.2d 1200, 1202–03 (10th Cir. 1986).  Next, the Court should consider whether the

well-pleaded allegations of fact—which are admitted by the defendant upon

default—support a judgment on the claims against the defaulting defendant.  *See Fed.*

*Fruit & Produce Co. v. Red Tomato, Inc.*, 2009 WL 765872, at *3 (D. Colo. Mar. 20,

2009) ("Even after entry of default, however, it remains for the court to consider whether

the unchallenged facts constitute a legitimate basis for the entry of a judgment.").

## A.   Jurisdiction

Arslani's claims are brought pursuant to Section 10(b) of the SEA (15 U.S.C. §
78j(b)) and Rule 10b-5, promulgated by the SEC (17 C.F.R. § 240.10b-5).  (ECF No. 1
¶ 8.)  The Court exercises subject-matter jurisdiction under 28 U.S.C. § 1331 because
Arslani's claims arise under federal law.  Further, UMF Group is alleged to be a
Colorado corporation that transacted business in the State of Colorado.  (ECF No. 1 ¶
10.)  Because UMF Group is domiciled in Colorado, the Court properly exercises
personal jurisdiction.  *See Dallas Buyers Club, LLC v. Cordova*, 81 F. Supp. 3d 1025,
1032 (D. Colo. 2015) ("As Defendant resides in the District of Colorado, the Court has
personal jurisdiction over him.").

## B.   Allegations

As only Count II of the Complaint concerns UMF Group, the Court considers
only that claim.  (ECF No. 1 ¶¶ 71–78.)  In Count II, Arslani alleges that UMF Group
violated Section 10(b) and Rule 10b-5.  (*Id.* ¶ 8.)  Specifically, he alleges that UMF
Group's representations about its crypto-currency business were fraudulent and used
as a tactic to artificially inflate stock prices.  (*Id.* ¶ 59.)

To recover for violations of Section 10(b) and Rule 10b-5, a plaintiff must show
"(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a
connection between the misrepresentation or omission and the purchase or sale of a
security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and
(6) loss causation."  *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267
(2014).  Additionally, Federal Rule of Civil Procedure 9(b) mandates that in cases of

fraud, "the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b).

In his Complaint, Arslani alleges that UMF Group "made untrue statements of material facts, or omitted material facts," and "engaged in acts, practices, or courses of business which operated as fraud or deceit upon [Arslani]." (ECF No. 1 ¶ 73.)  Namely, Arslani contends that UMF Group materially misrepresented the character of its business by falsely expressing plans to enter the field of crypto-currency.  (*Id.* ¶¶ 33–41.)  Arslani further alleges that UMF Group made these false statements with the intention of artificially inflating its stock and enticing investors.  (*Id.* ¶ 39.)  Arslani states that he made his investment decision based on his review of UMF Group's disclosures concerning its crypto-currency endeavors, thereby connecting the misrepresentation to his purchase of securities in UMF Group.  (*Id.* ¶¶ 55–56.)

Arslani also contends that he relied on UMF Group's disclosures in deciding to invest.  (*Id.*)  Had he been aware that the information in the disclosures was false, he would not have invested.  (*Id.* ¶ 58.)  Arslani incurred a loss because the value of his 80,300 shares of stock fell from $1.67 per share to ultimately $0.05 per share.  (*Id.* ¶ 57.)  Arslani links the stock price drop to the revelation that UMF Group was not, in fact, involved in the business of crypto-currency.  (*Id.* ¶ 62.)

Because Arslani has stated with particularity the fraudulent actions UMF Group took which induced him to invest in the company at a loss, the Court finds that Arslani has established liability for the purposes of default judgment.  *See Fed. Fruit & Produce Co.*, 2009 WL 765872, at *3 (stating that the district court considers whether the

unchallenged allegations establish a claim for relief).

## C.    Damages

The amount of damages must be ascertained before a final default judgment can

enter against a party.  *See Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984).

Actual proof must support any default judgment for money damages.  *See Klapprott v.*

*United States*, 335 U.S. 601, 611–12 (1949).

Arslani seeks damages of $85,549.30, representing the amount he paid for

UMF Group stock.  (ECF No. 33 at 5.)  Arslani also requests prejudgment interest in the

amount of $19,383.10, which represents 9% per annum on his compensatory damages

from the date the action accrued in 2018.  (*Id*. at 2.)  He further seeks an award of post-

judgment interest at a rate of 9%.[1]  (*Id.* at 6.)

Exhibit A to Arslani's Complaint itemizes the amount he paid for UMF Group's

stock.  (ECF No. 1 at 25.)  The Exhibit demonstrates that Arslani paid a total of

$85,549.38, the amount of his principal damage award sought.  (*Id.*)  Arslani does not

state, however, whether he sold his stock shares, and, if so, for what price.

Additionally, if he still possesses the stock, he does not provide documentation of its

current value for the purpose of verifying his net loss.  Without providing this

information, Arslani has not met his burden of establishing that he has an ascertained

---

[1] Arslani cites to Colorado Revised Statute § 13-21-101 in support of his request for interest at a rate of 9%.  (ECF No. 33 Exhibit A at 2.)  However, this is a state statute, and concerns interest on damages awards in personal injury actions.  *See* Colo. Rev. Stat. § 13-21-101.  As the present action arises under federal law, it is not applicable.  *See Guides, Ltd. v. Yarmouth Group Property Management, Inc.*, 295 F.3d 1065, 1077–78 (10th Cir. 2002) (stating that where the prejudgment interest rate is governed by federal law, a district court may choose any rate which would fairly compensate the plaintiff); 28 U.S.C. § 1961(a) (stating the method of calculating post-judgment interest on a federal district court judgment).

amount of damages.  *See First Home Bank v. USA Pro Roofing & Constr., LLC*, 2018

WL 6990394, at \*3 (D. Colo. Oct. 19, 2018) (stating that "allegations relating to the

amount of damages are generally not accepted as true" and that where "the damages

sum is not certain or capable of easy computation, the court may hold whatever hearing

or inquiry it deems necessary").  Without this additional documentation, Arslani is

effectively contending that his gross loss (the amount he paid for the UMF Group stock)

is the same as his *net* loss–in other words, that the offset for the residual value or sale

proceeds of the UMF Group stock is zero.  This may in fact be the case, but on the

record currently before the Court no such finding can be made.

Additionally, because the calculation of pre- and post-judgment interest depends

on the principal amount of damages, the Court also cannot determine these amounts at

this time.  *See IMM, LLC v. Plankk Technologies, Inc.*, 2020 WL 902320, at \*4–5 (D.

Colo. Feb. 25, 2020) (computing prejudgment interest based on the plaintiff's

documented damages).  Therefore, the Court will permit Arslani to file the appropriate

supplemental documentation establishing his net loss or damages arising out of the

fraudulent conduct of UMF Group.

## IV. CONCLUSION

For the reasons set forth above, the Court defers ruling on the Motion.  While the

Court has determined liability in Plaintiff's favor, default judgment cannot enter until the

other part of the legal equation–damages–is established to the Court's satisfaction.

Accordingly, Arslani is directed to file supplemental documentation of his

damages no later than **December 4, 2020.**

Dated this 18ᵗʰ day of November, 2020.

BY THE COURT:

William J. Martinez
United States District Judge