IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 19-cv-1117-WJM-KLM

ADEM ARSLANI,

    Plaintiff,

v.

UMF GROUP, INC.,
JOHN T. ROOT, JR., and
SEAN ROSS,

    Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Before the Court are Plaintiff Adem Arslani's Motion for Default Judgment ("Motion") against Defendant UMF Group, Inc. (ECF No. 33), and Arslani's Supplement to his Motion as ordered by the Court (ECF No. 35). For the reasons that follow, the Court grants the Motion.

### I. BACKGROUND

This action for violation of federal securities law arises out of UMF Group's alleged misrepresentations regarding the value of its stock, which led Arslani to purchase 80,300 shares of UMF Group stock for a total of approximately $85,500. (ECF No. 1 ¶¶ 64–82.) Arslani alleges that shortly after he purchased the stock, its value fell to less than $0.10 per share. (*Id.* ¶ 57.) After UMF Group failed to appear or otherwise defend the action, Arslani obtained the clerk's entry of default on January 13, 2020. (ECF No. 25.) Arslani filed his Motion on June 25, 2020. (ECF No. 33.)

On November 18, 2020, the Court issued an Order determining that Arslani had established UMF Group's liability. (ECF No. 34.) The Court deferred ruling on the Motion, however, as Arslani had not proven his monetary damages with particularity as is required for a grant of default judgment, and directed him to file supplemental documentation by December 4, 2020. (*Id.* at 1.) Arslani filed the supplemental documentation of his damages on December 4, 2020. (ECF No. 35.)

## II. LEGAL STANDARD

Default must enter against a party who fails to appear or otherwise defend a lawsuit. Fed. R. Civ. P. 55(a). Default judgment must be entered by the Clerk of Court if the claim is for "a sum certain"; in all other cases, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). The amount of damages must be ascertained before a final default judgment can enter against a party. *See Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984). Actual proof must support any default judgment for money damages. *See Klapprott v. United States*, 335 U.S. 601, 611–12 (1949).

## III. ANALYSIS

As stated, the Court has determined that Arslani established the Court's jurisdiction over this action, and UMF Group's liability for violations of Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and Rule 10b-5, promulgated thereunder by the Securities and Exchange Commission (17 C.F.R. § 240.10b-5). (ECF No. 34 at 4–5.) The Court therefore considers whether Arslani has adequately demonstrated his entitlement to the damages he seeks.

A.  **Value of UMF Group Stock**

In its Order, the Court noted that while Arslani provided documentation of his purchases of UMF Group stock, he had not indicated whether he had sold his shares, or, if he had retained the shares, what their present value was.  (ECF No. 34 at 6–7.) The Court therefore directed Arslani to provide documentation of his net loss as a result of purchasing UMF Group stock.  (*Id.* at 6.)

In his supplemental documentation, Arslani includes a signed declaration describing his possession and disposition of his UMF Group shares, and a website printout reflecting the present value of UMF Group stock.  (ECF Nos. 35-1 & 35-2.) Arslani states that he sold 150 shares of UMF Group stock on January 26, 2018, for a total of $127.04.  (ECF No. 35-1 ¶ 3.)  He has not sold his remaining 80,150 shares of UMF Group stock.  (*Id.* ¶ 4.)  Arslani states that the current value of UMF Group stock is $0.007, and the attached printout from the investment advising website, OTC Market, corroborates this claim.  (*Id.* ¶ 6; ECF No. 35-2 at 1–3.)

Accordingly, the present value of the stock in Arslani's possession is $561.05. (ECF No. 35-1 ¶ 6.)  Arslani's net loss, therefore, is $84,988.33.  Arslani's documentation and declaration have satisfied the Court that UMF Group is liable to him in this principal amount.

B.  **Prejudgment Interest**

Under federal law, "prejudgment interest is ordinarily awarded, absent some justification for withholding it."  *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1256 (10th Cir. 1988).  Prejudgment interest is not awarded as a matter of right,

however.  *Id.*  Rather, a court "must determine whether an award of prejudgment interest would serve to compensate the injured party," and then consider "whether the equities would preclude the award of prejudgment interest."  *Id.* at 1257.  The Tenth Circuit has upheld awards of prejudgment interest on default judgment.  *See Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1126 (10th Cir. 2003).

First, the Court finds that awarding prejudgment interest would be compensatory in this case.  The Tenth Circuit has stated that prejudgment interest is particularly appropriate in cases of investment fraud.  *U.S. Indus.*, 854 F.2d at 1257.  Here, prejudgment interest would represent returns on investment that Arslani may have gained had he invested his money elsewhere.  An award of prejudgment interest would compensate Arslani "for being deprived of the monetary value of his loss from the time of the loss to payment of the judgment," *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1286 (10th Cir. 2002).

Second, the Court finds that awarding prejudgment interest is equitable.  The Tenth Circuit has held that "pre-judgment interest should normally be awarded on successful federal claims." *FDIC v. UMIC, Inc.*, 136 F.3d 1375, 1388 (10th Cir. 1998); *see also United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1236 (10th Cir. 2000) (holding that "in the federal context, this Court has adopted a preference, if not a presumption, for pre-judgment interest.").  Further, equities favor an award of prejudgment interest "where a defendant's behavior has involved dishonest or fraudulent conduct." *U.S. Indus.*, 854 F.2d at 1257.  Here, Arslani has established that UMF Group fraudulently misrepresented the value of the company, causing him to

4

purchase UMF Group stock at a substantial loss. (ECF No. 34 at 5–6.) As the equities do not preclude an award of prejudgment interest, the Court proceeds to determining the applicable interest rate.

When an action arises under federal law, a court is "free to choose any rate which would fairly compensate the plaintiff." *Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002) (citing *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 764 (10th Cir. 1997)). A court may, but is not required to, look to state law to determine an appropriate rate of interest. *Towerridge, Inc.*, 111 F.3d at 764.

Relying on Colorado law, Arslani seeks prejudgment interest at a rate of 9%, compounded annually. (ECF No. 35 at 3; *see also* Colo. Rev. Stat. § 13-21-101.) Alternatively, Arslani requests prejudgment interest "at a rate which the Court deems appropriate to fairly compensate [Arslani]." (ECF No. 35 at 3.)

The Court finds that the formula for calculating the prejudgment interest set forth in *Reed v. Mineta*, 438 F.3d 1063, 1067 (10th Cir. 2006), is the most appropriate method of calculation. This calculation will compensate Arslani without granting him a windfall recovery. This equation utilizes the IRS underpayment rate set forth in 26 U.S.C. § 6621, which is the federal short-term rate plus 3%. *Id.*; 26 U.S.C. § 6621. The current short-term federal interest rate is 0.15%. *See Applicable Federal Rates (AFR) for December 2020*, Internal Revenue Serv. at 2, available at http://apps.irs.gov/app/picklist/list/federalRates.html (last visited Dec. 14, 2020). Adding three percentage points in accordance with 26 U.S.C. § 6621 yields a prejudgment

interest rate of 3.15%.  See 26 U.S.C. § 6621.

Arslani seeks prejudgment interest from the date the cause of action accrued, January 2018, to the date of the Court's Order.  (ECF No. 35-3 at 1.)  He does not specify an exact date, but appears to refer to the date that an agent of UMF Group induced him to purchase UMF Group stock, January 12, 2018, as the date he incurred his economic losses.  (ECF Nos. 1-1 & 35-1; see also Caldwell, 287 F.3d at 1286 (stating that prejudgment interest is available to compensate a party for the time between incurring economic loss to the time of judgment).)  Accordingly, the Court calculates prejudgment interest at 3.15% per annum against the principal amount of $84,988.33 from January 12, 2018 through the date of this Order, to arrive at an amount of $7,826.03.

### C.     Post-Judgment Interest

Arslani is statutorily entitled to post-judgment interest on any monetary judgment in a civil case recovered in a district court.  See 28 U.S.C. § 1961(a).  Accordingly, the Court awards Arslani post-judgment interest from the date of this Order as determined by 28 U.S.C. § 1961.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Arslani's Motion for Entry of Default Judgment (ECF No. 33) is GRANTED;
2. At such time as the Clerk enters final judgment with regards to all parties to this action, the Clerk shall enter judgment in favor of Arslani and against UMF Group in the amount of $84,988.33, and prejudgment interest in the amount of

   $7,826.03; and

3. Arslani is awarded post-judgment interest on the foregoing sums from the date of this Order at the rate set by 28 U.S.C. § 1961.

Dated this 14th day of December, 2020.

                BY THE COURT:

                _____
                William J. Martínez
                United States District Judge