IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge William J. Martínez**

Civil Action No. 19-cv-1117-WJM-KLM

ADEM ARSLANI,

      Plaintiff,

v.

UMF GROUP, INC., a Colorado corporation,
JOHN T. ROOT, and
SEAN ROSS or JOHN DOE using name "SEAN ROSS" as an alias,

      Defendants.

---

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

In this action, brought pursuant to Section 10(b) and Rule 10b-5 of the Securities and Exchange Act of 1934, Plaintiff Adem Arslani alleges that Defendants UMF Group, Inc. ("UMF"), UMF's purported President, Sean Ross, and outside counsel to UMF, John T. Root, engaged in fraudulent practices that induced him to purchase stock at an inflated price.  Plaintiff incurred substantial economic losses when the stock plummeted shortly after his purchases.  This matter is before the Court on Plaintiff's unopposed Motion for Summary Judgment ("Motion").  (ECF No. 47.)  For the following reasons, the Motion is denied.

## I. BACKGROUND[1]

At all times relevant to this action, UMF was listed on OTC Markets Group, Inc.

---

[1] The following factual summary is based on the Motion and documents submitted in support thereof.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

("OTC"), an online portal for use by issuers of securities to publish news releases, financial reports, and other disclosures.  (ECF No. 47 at 2.)  UMF retained Root as outside counsel for the purpose of publishing letters on OTC.  (*Id.*)  On behalf of UMF, Root wrote two letters addressed to OTC on January 25, 2017 (the "First Letter") and September 18, 2017 (the "Second Letter").  (*Id.* at 3.)

The First Letter was drafted on Root's letterhead and identified the contents of the letter as his opinions.  (*Id.* at 4.)  In the letter, Root stated that: he "relied on publicly available information from the Secretary of State of the State of Colorado and information obtained from [UMF's] officers and directors" (ECF No. 47-3 at 2); he reviewed UMF's unaudited financial reports from December 2011 to December 2016 (ECF No. 47 at 4); those financial reports were prepared by Ross (*id.*); and Ross was qualified to prepare the reports (*id.*).

After the First Letter was published on OTC, UMF issued numerous press releases announcing that it was abandoning the oil and gas industry and entering the medical marijuana business.  (*Id.* at 5.)  Ross caused UMF to issue him shares of common stock, giving him a 99.4% ownership stake in the company.  (*Id.*)  Then Ross issued common stock to several unnamed debtors of UMF.  (*Id.*)

Several months later, in September 2017, Root's Second Letter was published on OTC.  (*Id.*)  The letter contained much of the same content as the First Letter, including all the statements listed above.  (*See* ECF No. 47-4 at 2–4.)  The letter does not mention that UMF had pivoted to the medical marijuana business.  (*Id.*)

After the Second Letter was published on OTC, UMF announced another change to its business model: the company would now focus on cryptosecurity.  (ECF No. 1 at

15.)  On January 12, 2018, an individual from StockProfitReport.com solicited Plaintiff to purchase UMF stock.  (*Id.* at 16.)  He told Plaintiff that UMF was about to announce its transition to a cryptosecurity business and Plaintiff could "get in on the ground floor" and enjoy "significant returns."  (*Id.*)  Plaintiff visited the OTC website and reviewed UMF's financial statements and disclosures about its new product, "CrytoSecure."  (*Id.*)  He also reviewed Root's letters.  (*Id.*)  Then Plaintiff purchased 80,300 shares of UMF stock for a total price of $85,500.  (*Id.*)

In February 2018, shortly after Plaintiff purchased the shares, the UMF stock price fell dramatically, and the value of Plaintiff's shares dropped to $500.  (ECF No. 47 at 6.)

## II. PROCEDURAL HISTORY

On April 16, 2019, Plaintiff brought this securities fraud action, alleging: (1) a violation of Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C.S. § 78(b) ("Section 10(b)"), and 17 C.F.R. § 240.10b-5 ("Rule 10b-5") against Root, (2) a violation Section 10(b) and Rule 10b-5 against UMF and Ross, and (3) a violation Section 20(a) and Rule 10b-5 against Ross.  (ECF No. 1.)

UMF failed to respond to Plaintiff's complaint and summons, and Plaintiff filed a Motion for Default Judgment against UMF on June 25, 2020.  (ECF No. 33.)  On December 14, 2020, this Court granted the Motion for Default Judgment and ordered that a judgment in the amount of $84,988.33 and prejudgment interest of $7,826.03 shall be entered against UMF when final judgment is entered with regards to all parties. (ECF No. 36.)

On May 17,2021, Plaintiff filed this Motion, seeking summary judgment on its

3

claim against Root.  (ECF No. 47.)

### III. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party.  *Allen v. Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248).  The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment.  *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998).

Furthermore, summary judgment can be granted without a hearing upon the review and examination of the supporting documentation used in evaluating the merits of the motion.  *See Geear v. Boulder Cmty. Hosp.*, 44 F.2d 764, 766 (10th Cir. 1988) (where non-movant failed to respond to motion for summary judgment, district court's review of briefs and other submitted materials satisfied "hearing" requirement of Fed. R. Civ. P. 56); *Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev.*, 922 F.2d 168, 178 (3d Cir. 1990) (where non-movant fails to respond to motion for summary judgment "district court may process the motion in accordance with Rule 56 without scheduling a hearing").

## IV. ANALYSIS

Plaintiff filed the instant Motion on May 17, 2021.  (ECF No. 47.)  Plaintiff seeks summary judgment on his Section 10(b) and Rule 10b-5 claim against Root.  (*Id.*)  Despite Root's failure to oppose the Motion, the Court cannot grant the Motion without first determining whether Plaintiff has met his burden of production.  *See Reed v. Bennett*, 312 F.3d 1190, 1994–95 (10th Cir. 2002).  "If the movant fails to carry its burden under Rule 56 and its documents do not establish the absence of a genuine issue of fact, summary judgment must be denied, even if no opposing evidentiary matter is presented."  *Nichols v. United States*, 796 F.2d 361, 365 (10th Cir. 1986).

For a private plaintiff to prevail on a claim for violation of Section 10(b) and Rule 10b-5 of the Securities and Exchange Act of 1934, the plaintiff must prove six elements: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37–38 (2011) (internal quotation marks omitted).  The Court finds that it need only address the sixth element.

## A.      Legal Standard for Loss Causation

"To plead loss causation, a plaintiff must allege facts showing a causal connection between the revelation of truth to the marketplace and losses sustained by the plaintiff."  *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1154 (10th Cir. 2015); *see also Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) (loss causation is "a causal connection between the material misrepresentation and the loss").  Loss causation may be established "when a corrective disclosure reveals the fraud to the public and the

price subsequently drops."  *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1130,

1137 (10th Cir. 2009).

A plaintiff must "show both that the corrective information was revealed and that

this revelation caused the resulting decline in price."  *Id.* at 1140.  "To be corrective, the

disclosure need not precisely mirror the earlier misrepresentation, but it must at least

relate back to the misrepresentation and not to some other negative information about

the company."  *Id.*  The plaintiff must show that:

> [his] losses were attributable to the revelation of the fraud
> and not the myriad other factors that affect a company's
> stock price.  Without showing a causal connection that
> specifically links losses to misrepresentations, he cannot
> succeed.

*Id.* at 1137.

The loss causation requirement serves as a limiting device in securities claims,

ensuring that a defendant is only held liable for the foreseeable consequences of his

actions.  *See In re Williams*, 558 F.3d at 1137 ("The securities laws are not meant to

'provide investors with broad insurance against market losses, but to protect them

against those economic losses that misrepresentations actually cause.'") (quoting *Dura*,

544 U.S. at 345).

**B.      Plaintiff Failed to Meet His Burden on Loss Causation**

In his Motion, Plaintiff only briefly mentions the loss causation element in a

paragraph that attempts to establish that he has met his burden on the last four

elements of his claim against Root:

> Similarly, elements three through six are also easily
> satisfied.  Plaintiff's Verified Complaint explains that he
> reviewed all UMF Group's disclosures, including Root's
> Attorney Letters, and relied on the information therein in
> connection with his purchase of UMF Group's securities.

> Moreover, the entire fraudulent scheme perpetuated by the Defendants would not have even been possible without Root's Attorney Letters.  Without his Attorney Letters, UMF Group would have remained a "Dark" company as listed on OTC Markets and never would have obtained the "Pink: Current Information" tier that indicates a company's disclosures are up to date and comply with OTC Markets' guidelines.

(ECF No. 47 at 8–9 (citations omitted).)  As discussed above, elements three through six require the plaintiff to show: "(3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  *Matrixx Initiatives*, 563 U.S. at 37–38.  In this paragraph, Plaintiff makes intelligible arguments that: (1) the fourth element is satisfied because he alleged adequate facts in his verified complaint, and (2) the third element is satisfied because he would not have bought the stocks but for the Attorney Letters.  But Plaintiff does not make an argument related to loss causation nor does he point the Court toward any facts that could plausibly support his burden of production on this element.

Plaintiff does not point to evidence showing that information correcting Root's alleged misrepresentations was revealed before the stock price dropped in February 2018.[2]  Without a specific showing of relevant facts, the conclusion that the public revelation of Root's alleged misrepresentations caused UMF's stock price to drop would be entirely speculative.  *In re Williams*, 558 F.3d at 1140 ("Any reliable theory of loss causation that uses corrective disclosures will have to show both that corrective information was revealed, and that this revelation caused the resulting decline in

---

[2] Plaintiff's reference to a March 17, 2018 article about the fraudulent activities of UMF is not relevant here because it came *after* the value of the stock dropped in February 2018.  (ECF No. 1 at 18.)

price.").  Therefore, having failed the requisite evidentiary showing on this element of his

claim, Plaintiff's Motion will be denied.

## V. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1.      Plaintiff's Motion for Summary Judgment (ECF No. 47) is DENIED; and

2.      The parties are DIRECTED to contact the chambers of Magistrate Judge Kristen

L. Mix by no later than **January 11**, **2022** in order to promptly set a Status

Conference, or such other proceeding Judge Mix deems appropriate to move this

case forward.


Dated this 7th day of January, 2022.

BY THE COURT:

William J. Martinez
United States District Judge

8